**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-21654-CIV-MARTINEZ**

MAURICIO ENRIQUE TORRES
MARTINEZ,

   Petitioner,

v.

WARDEN, KROME SERVICE
PROCESSING CENTER, *et al.*,

   Respondents.[1]

_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner Mauricio Enrique Torres Martinez's Verified Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 [ECF No. 1]. Petitioner challenges his ongoing immigration detention at the Krome North Service Processing Center in Miami without having been afforded an individualized bond determination. (*See generally id.*). In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondent to show cause why the Petition should not be granted. (March 16, 2026 Order [ECF No. 5]). Respondent filed its "abbreviated" Response to the Court's show cause Order on March 19, 2026 [ECF No. 6]. The Court has considered the Petition, the Response, the record, and applicable law. For the following reasons, and in accordance with this Order, the Petition is **GRANTED**.

_____

[1] Respondents argue all Respondents except Assistant Field Office Director Charles Parra should be dismissed because "[a] writ of habeas corpus must 'be directed to the person having custody of the person detained.'" (Resp. 1 n.1); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004) (reaffirming that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent"). Petitioner does not contest that assertion. Thus, the Court refers to Respondent Parra as the sole Respondent.

Petitioner is a native and citizen of Colombia who entered the United States without inspection on December 19, 2022, and was apprehended at or near the southern border. (Pet. ¶¶ 1, 15). Petitioner was released by U.S. Immigration and Customs Enforcement ("ICE") on a grant of humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A), to be valid for one year, and he has resided in the United States ever since. (*Id.*). He was not issued an expedited removal order under 8 U.S.C. § 1225(b)(1). (*Id.* ¶ 1). Petitioner maintained full compliance with his reporting requirements and was given a mobile phone to report to ICE on a weekly basis for one year. (*See id.* ¶ 23). In December 2023, Petitioner physically reported to an ICE Field Office and was told to report back in one year, and when he reported in December 2024, Petitioner allegedly was told that he was no longer required to continue reporting. (*Id.*). Since his arrival, Petitioner had applied for asylum, obtained employment authorization, been issued a social security number, begun working as a licensed barber, established a residence in Florida, filed federal income tax returns, and obtained a valid Florida driver's license. (*See id.* ¶¶ 25–26).

On November 26, 2025, ICE re-detained Petitioner following his arrest for Battery in Orange County, Florida. (*Id.* ¶ 2). Although the Orange County State Attorney's Office filed a No Information Notice on December 29, 2025, stating that it would not be filing criminal charges against Petitioner, Petitioner has since remained in ICE custody at the Krome North Service Processing Center under the control of Respondent. (*Id.* ¶¶ 2, 15). According to Petitioner,

> ICE now refuses release and immigration courts take the position that they lack jurisdiction to redetermine custody under the Board of Immigration Appeals' (BIA) precedential decision in *Matter of Yajure Hurtado*, which holds that immigration judges have no bond jurisdiction over noncitizens "present in the United States without admission" detained under Immigration and Nationality Act ("INA") § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A). 29 I&N Dec. 216 (BIA 2025). This leaves Petitioner without any administrative avenue to challenge his detention, rendering habeas relief the only adequate and effective remedy. . . .

2

> This case presents a pure question of law regarding whether Petitioner's detention is governed by 8 U.S.C. § 1225(b)(2)(A), which mandates detention for noncitizens "seeking admission" at ports of entry, or by 8 U.S.C. § 1226(a), which provides discretionary detention with bond hearings for noncitizens already present in the United States.

(*Id.* ¶¶ 3–4). Accordingly, Petitioner requests that this Court either order his immediate release or order a bond hearing before an Immigration Judge. (*Id.* ¶ 5).

In the Response, Respondent explains that the Petition raises four legal questions: (1) what statutory authority applies here, 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(a); (2) whether the Court has jurisdiction to hear such a claim under 8 U.S.C. § 1252; (3) whether Petitioner is entitled to a bond hearing; and (4) if Petitioner is entitled to a bond hearing, whether he must first exhaust his administrative remedies before he receives one. (Resp. 1–2). Respondent argues "Petitioner is subject to mandatory detention under § 1225(b)(2), because he was present in the United States without being admitted or paroled," which means he is not entitled to a bond hearing. (*Id.* 2). Respondent acknowledges, however, both that "Judges in this District have reached the opposite conclusion" and that "this Court's recent decision in *Aguilar Merino v. Ripa*, No. 25-23845-CIV-MARTINEZ, 2025 WL 2941609, at *3, 8 (S.D. Fla. Oct. 15, 2025), would control the result here . . . , as the legal arguments are not materially distinguishable . . . on the issue of which statutory provision authorizes Petitioner's detention." (*Id.* 3–4).

Respondent is correct that the Petition's outcome hinges on whether Respondent's authority to detain Petitioner arises under § 1225(b)(2) or § 1226(a). Respondent also is correct that this Court has already answered that question: For "noncitizens residing in" and "apprehended while already within the United States," § 1226(a) applies. *Aguilar Merino*, 2025 WL 2941609, at *3. This is so because, as the Court explained in *Aguilar Merino*, Congress determined in 1996 that "noncitizens already residing in the U.S." have "more substantial due process rights" than

3

"noncitizens recently arriving." *See id.* In the thirty years since then, federal courts and agencies have uniformly held that § 1226(a) governs the detention of noncitizen residents, while § 1225(b)(2) applies to noncitizens arriving at an entry point. *See id.*

Indeed, even ICE's own agency, the Department of Homeland Security ("DHS"), interpreted the statutes this way until a July 2025 policy change. *See id.* Pursuant to the DHS's new policy, however, ICE has been instructed to treat noncitizen residents "in the same manner that 'arriving aliens' have historically been treated," which means mandatory detention and no eligibility for a bond hearing. *See id.* (quoting *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607 (July 8, 2025)); *Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (B.I.A. 2025) (adopting DHS's new interpretation). Because that abrupt shift in interpretation "runs afoul of the statutes' legislative history, plain meaning, and interpretation by courts in" six Circuits over the last three decades, this Court rejected it and instead adhered to the interpretation supported by a "plain reading" of § 1225(b)(2) and § 1226(a).[2] *See Aguilar Merino*, 2025 WL 2941609, at \*3. The Court sees no reason to depart from that holding.[3]

Respondent detained Petitioner, who has lived in the United States for several years, following his arrest in Orange County, Florida—not at the border or the port. (*See* Pet. 2). For that reason, § 1226(a), not § 1225(b)(2), governs his detention. *See Aguilar Merino*, 2025 WL

---

[2] The Court acknowledges the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), in agreement with Respondent's position. Of course, that decision "is not binding here, and it contradicts the vast majority of district court opinions addressing the issue." *Lobovillalobos v. Hardin*, No. 2:26-cv-00446, 2026 WL 621380, at \*2 n.1 (M.D. Fla. Mar. 5, 2026); *see also Buenrostro-Mendez*, 166 F.4th at 509 (Douglas, J., dissenting) (criticizing the decision as "totally unsupported"). Therefore, it does not persuade this Court.

[3] Respondent notes that the government has appealed two decisions from this District that have reached the same conclusion. (*See* Resp. 5). The Eleventh Circuit has not yet decided those appeals, so the Court's *Aguilar Merino* decision remains good law.

CASE NO. 26-21654-CIV-MARTINEZ

2941609, at *3. And as the Supreme Court has made clear: "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Petitioner is therefore entitled to a bond hearing under § 1226(a).

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition is **GRANTED**. Because the Court finds Petitioner is detained under § 1226(a), on or before **April 6, 2026**, Respondent must either:

   a. give Petitioner an individualized bond hearing consistent with that statute; or

   b. release Petitioner.

2. The Clerk **SHALL MAIL** a copy of this Order to Petitioner.

3. This case is **CLOSED**.

**DONE AND ORDERED** in Miami, Florida, this 26 day of March 2026.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc:     all counsel of record

5